**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION**

| | |
|---|---|
| ASHLEY BROWN MUNOZ, *as surviving daughter and as the administrator of the* ESTATE OF JERRY LEE BROWN, and JAMES NEWT BROWN, *as surviving son*, <br><br> Plaintiffs, <br><br> v. <br><br> JESSICA ASKEW, individually, <br><br> Defendants. | Civil Action File <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Ashley Munoz Brown, as surviving heir and as the administrator of the Estate of Jerry Lee Brown, and James Newt Brown, as surviving heir, file this Complaint for the wrongful death and predeath pain and suffering of their father. This action is brought pursuant to 42 U.S.C. § 1983, for deliberate indifference in violation of the Eighth and Fourteenth Amendments, against the prison staff who ignored the horrific violence that ended Mr. Brown's life while he was incarcerated at Johnson State Prison.

## PARTIES

1. Plaintiff Ashley Munoz Brown is an adult resident citizen of the State of Texas. She is Mr. Brown's daughter and has been appointed administrator of the Estate of Jerry Lee Brown. *See In re Estate of Jerry Lee Brown*, Johnson County Probate Court, Estate No. PR2022-34. As administrator of the Estate of Jerry Lee Brown and the surviving child, she has the right to recover for his pre-death pain and suffering as well as for the "full value of the life" of her father Jerry Lee Brown, pursuant to O.C.G.A. § 51-4-2.

2. Plaintiff James Newt Brown is an adult resident of the State of Georgia. He is Mr. Brown's son. As a surviving child, he also has the right to recover, for the "full value of the life" of his father Jerry Lee Brown, pursuant to O.C.G.A. § 51-4-2.

3. Defendant Jessica Askew is a Georgia Department of Corrections official, who is sued in her individual capacity. At all times relevant to the complaint, Askew acted under the color of law. Askew is a resident of Johnson County, Georgia.

## JURISDICTION

4. This action is brought pursuant to 42 U.S.C. § 1983, and this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

## VENUE

5. Venue is proper in this District and in the Dublin Division because Mr. Brown was killed at Johnson State Prison, which is located in Wrightsville, Georgia. Johnson State Prison is situated within the district and divisional boundaries of the Southern District of Georgia, Dublin Division.

## FACTS

6. On November 12, 2020, Jerry Lee Brown, was found dead in his cell at Johnson State Prison.

7. He was murdered by his cellmate, Charles Thomas White, in a loud and violent attack that lasted approximately two hours and involved multiple weapons including shanks and a hammer.

8. Sounds of the brutal murder were heard across the G dormitory: of Mr. Brown pleading loudly for his life and crying for help, of his head hitting the concrete, and of his body being slung and tied.

9. Mr. Brown screamed for help and pled for his life for at least 45 minutes.

10. Inmates in the neighboring cells banged on the doors and screamed for help, but the attack continued, and no one responded for over two hours.

11. Defendant Askew was assigned to guard the area where Mr. Brown was housed in the G dormitory.

12. During the attack, Askew was directed to be posted inside a guard station that was located in the center of the dormitory, such that Mr. Brown's cell, G2-Room 240, was visible from the guard office.

13. Askew was, in fact, in the designated guard station in the center of the dormitory during the hours when the attack occurred.

14. Askew was on duty in the immediate area and ignored Mr. Brown's excruciating cries for help as he was being beaten and stabbed.

15. Askew ignored the screaming pleas of neighboring cellmates.

16. When inside the guard office, correctional officers can hear inmates' voices in the G building, and inmates can hear the officers' voices.

17. Askew. in fact, heard the screams and shouts from Brown and others.

18. By the time a guard finally arrived to the cell, after the two-hour-long attack, Mr. Brown was unresponsive.

19. Mr. Brown's body had numerous stab wounds, blunt force injuries to his face and head, brain injuries, a fractured right cheek bone, abrasions on torso and extremities, and contusions on legs and right buttock.

20. Mr. Brown's body was found with his arms and legs tied and with multiple weapons left inside his body including a sharpened plastic object in his eye and a metal object in his ear.

21. The stab wounds to his head ultimately caused his death, when he was 61-years-old, and was looking forward to being released to a transition center that year.

22. Prior to Mr. Brown's death, the following conditions at Johnson State Prison posed a substantial risk of harm to all incarcerated there:

   (a) Fights occurred between inmates on a regular basis resulting in injuries requiring medical attention.

   (b) Inmates throughout the prison possessed weapons such as shanks and knives.

   (c) Weapons were not confiscated from prisoners as required by standard operating procedures.

   (d) Critical security posts went unmanned because the prison was understaffed.

   (e) Known violent prisoners were not monitored and supervised, which contributed to inmate-on-inmate violence.

   (f) Contraband and illegal drugs, including methamphetamine, were routinely brought into the prison which were not confiscated, monitored, or supervised, and which also contributed to inmate-on-inmate violence.

   (g) Routinely the prison did not maintain its internal security cameras so that violent attacks could not be reviewed or safety issues addressed.

   (h) Routinely the prison was not adequately staffed. Security posts were left unmanned, leaving inmates without supervision.

23. These conditions posed a significant risk of harm to prisoners in violation of clearly established law.

24. Askew was on notice of and was subjectively aware of the foregoing critical problems of safety, security, and violence at Johnson State Prison and of the specific risk that the prison conditions presented to Mr. Brown, as demonstrated by the following:

   (a) Defendant knew that inmates had been critically injured by other inmates wielding weapons that were confiscated.

   (b) Defendant knew that the security failures described above had contributed to the death of another prisoner months earlier.

      (c) Defendant knew that many prisoners and prisoners' family members complained about the unusually high level of violence at Johnson State Prison and the safety of inmates there.

25. Despite this notice that conditions at the prison were intolerable and unconstitutional, Askew did not respond to an obviously life threatening fight in progress of which she was subjectively aware.

26. Defendant Askew was deliberately indifferent to the loud cries of both Mr. Brown himself and the neighboring inmates who were banging on the doors for help.

27. Had Defendant Askew responded to Mr. Brown's extended screams for help—or the pleas from other incarcerated men—Mr. Brown would not have been murdered. Instead, she did nothing, knowing that a violent attack was taking place.

## COUNT ONE
### *Deliberate Indifference under the Eighth and/or Fourteenth Amendments*
### *42 U.S.C. § 1983*

28. This claim is brought against Defendant Askew in her individual capacity under federal law.

29. Defendant objectively knew of the serious danger to Jerry Lee Brown that was sufficiently serious to violate the Eighth Amendment because it is obvious to lay persons that someone will die if they are locked in a cell with a prisoner who is on illegal drugs, who has multiple lethal weapons in his possession, a history of physical violence, and she heard screams from Mr. Brown and shouting from other inmates for help.

30. Defendant subjectively knew that Jerry Lee Brown was facing serious injury or death when over the course of two hours she heard: the sounds of Mr. Brown pleading for his life and crying out in pain, his body being violently thrown about his cell, a loud beating with weapons, and of neighboring inmates beating on the walls and screaming for help.

31. Despite Defendant's subjective knowledge of the brutal attack that Mr. Brown would face and was experiencing, she did nothing.

32. Defendant ignored the sounds of violence for two hours.

33. Defendant was within earshot of Mr. Brown's cell and could hear his cries.

34. Defendant could also hear the cries and banging of the neighboring cellmates.

35. Yet Defendant still did nothing to respond.

36. Had the Defendant taken any action, Mr. Brown would still be alive.

37. The individual Defendant's actions and inactions went beyond mere negligence.

38. Because Defendant acted with the mental state necessary to violate the Eighth Amendment, she is not entitled to qualified immunity. *See Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1186 (11th Cir. 1994), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n.9 (2002) ("'A finding of deliberate indifference necessarily precludes a finding of qualified immunity; prison officials who *deliberately* ignore the serious medical needs of inmates cannot claim that it was not apparent to a reasonable person that such actions violated the law.'").

### COUNT TWO
*Punitive Damages*

39. By engaging in the above-described conduct, the individual Defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences so as to entitle Plaintiff to punitive damages.

WHEREFORE, Plaintiffs respectfully prays that this Court:

a) Assume jurisdiction over this action;

b) Grant Plaintiffs a trial by jury;

c) Declare that the acts and omissions described herein violated Plaintiffs' rights under the Constitution and laws of the United States;

d) Enter judgment in favor of Plaintiffs and against Defendant for all damages allowed by law, including but not limited to:

    a. The full value of the life of Jerry Lee Brown;

    b. Pain and suffering;

    c. Funeral and burial expenses;

    d. Nominal damages; and

    e. Punitive damages.

e) Award Plaintiffs the costs of this lawsuit and reasonable attorneys' and expert fees and expenses pursuant to 42 U.S.C. § 1988(b) & (c) and as otherwise allowed by law;

f) Order such additional relief as this Court may deem just and proper.

Respectfully submitted this the 11th day of November, 2022.

/s/ Samantha Funt
Samantha Funt
Georgia Bar No. 943783
Zack Greenamyre
Georgia Bar No: 293002

MITCHELL AND SHAPIRO LLP
3490 Piedmont Road, Suite 650
Atlanta, GA 30305
(404) 812-4747
(404) 812-4740-Facsimile
sam@mitchellshapiro.com
zack@mitchellshapiro.com